**Joseph I. LIEBERMAN, Attorney General of the State of Connecticut, et al.**

v.

**FEDERAL TRADE COMMISSION.**

Civ. No. H–84–716.

United States District Court, D. Connecticut.

Nov. 26, 1984.

Robert M. Langer, Asst. Atty. Gen., Hartford, Conn., Stephen P. Kilgriff, Atty. Gen., and Hubert H. Humphrey, III, Atty. Gen., St. Paul, Minn., LeRoy S. Zimmermann, Atty. Gen., and Eugene F. Waye, Atty. Gen., Harrisburg, Pa., Dennis J. Roberts, II, Atty. Gen., and Faith A. LaSalle, Atty. Gen., Providence, R.I., Thomas M. Mengler, Asst. Atty. Gen., Austin, Tex., for plaintiffs.

W. Philip Jones, Asst. U.S. Atty., Hartford, Conn., Howard E. Shapiro, Joanne L. Levine, Sandra M. Vidas, F.T.C., Washington, D.C., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

This case arises on plaintiffs' motion for summary judgment seeking a declaratory judgment that the Federal Trade Commission ("Commission") has authority to make available to state law enforcement agencies information generated by the Commission pursuant to the premerger notification provisions of the Hart-Scott-Rodino Act. The defendant Commission has filed a cross-motion for summary judgment.

This case turns solely on an issue of law: Does the Commission have authority to disclose to state law enforcement officials information and documentary materials obtained from companies pursuant to the premerger notification provisions of the Clayton Act § 7A, 15 U.S.C. § 18a (1982), as enacted by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub.L. No. 94–435, 90 Stat. 1383 (1976) ("premerger" or "HSR" materials).

### Factual Background

In January 1984, Texaco and Getty agreed to merge and filed information and documentary material with the Commission

and Justice Department, as required by section 7A of the Clayton Act. Between January and March, 1984, each of the plaintiff attorneys general [1] requested access to premerger information and documents submitted by Texaco and Getty and to memoranda by Commission staff concerning the merger.[2] Their requests were made pursuant to the FTC Act § 6(f), 15 U.S.C. § 46(f) (as amended in 1980), which gives the Commission discretionary authority to share certain information with state and federal law enforcement agencies on a nonpublic basis for use in law enforcement proceedings.

The Commission responded to the requests in separate but essentially identical letters dated May 2, 1984. A majority of the Commission concluded that section 6(f) of the FTC Act did not authorize the Commission to share these documents with state officials because section 7A(h) of the Clayton Act prohibited the Commission from disclosing premerger materials. *See Texaco, Inc.*, 3 Trade Reg.Rep. (CCH) ¶ 22,146 at 22,993. Since all the documents sought by the plaintiffs consisted either of premerger materials or of FTC staff memoranda of which information derived from premerger materials was deemed by the Commission to be an inextricable part, the Commission held that it was precluded from granting access to any of the documents sought, whether or not it might otherwise wish to do so. 3 Trade Reg.Rep. at 22,995. Plaintiffs' suit followed the Commission's denial of their requests.

This action was brought under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and the Declaratory Judgments Act, 28 U.S.C. § 2201. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1337.

### Discussion

■■■ This case, arising on cross-motions for summary judgment, presents a pure question of statutory interpretation. It is well settled that courts have primary responsibility over questions of statutory interpretation, *Lubrizol Corp. v. EPA*, 562 F.2d 807, 816–17 n. 23 (D.C.Cir.1977), and that the cardinal rule for courts to follow in interpreting statutes is to ascertain congressional intent and give effect to the legislative will. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). While it is elementary that the starting point in every case involving the construction of a statute is the language itself, *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); and *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977)), the court should not be loathe to probe beneath the surface in its search for underlying intent. *Mohegan Tribe v. State of Conn.*, 483 F.Supp. 597, 602 (D.Conn.), *aff'd*, 638 F.2d 612, *cert. denied*, 452 U.S. 968, 101 S.Ct. 3124, 69 L.Ed.2d 981 (1980). When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. *Mohegan Tribe v. State of Conn., supra* (citing *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976), quoting *United States v. American Trucking Ass'n*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940)).

■■■ Nevertheless, the Commission argues that by its terms the statute forbids the Commission to make material acquired

---

**1.** The named plaintiffs in this case are the attorneys general of the states of Connecticut, Minnesota, Pennsylvania and Rhode Island. In addition, the attorneys general of the State of Texas and the State of California have been granted permission to appear in this matter as amici curiae for the purpose of representing the interests of their respective states.

**2.** In order to expedite the processing of plaintiffs' requests this action was limited to Commission-generated documents.

pursuant to section 7A available to the state attorneys general. Further, the Commission argues that its interpretation of the statute is entitled to substantial deference, and that it should be upheld so long as its interpretation is a permissible construction of the statute even if the court would read the statute differently. *Chevron USA v. NRDC,* — U.S. —, — - —, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). While there can be no doubt that the interpretation by an agency charged with the administration of a statute is entitled to substantial deference, *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982), such deference is constrained by the court's obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history. *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Moreover, thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given an agency's interpretation of a statute it is charged with administering. *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981).

■ In a recent case, also involving a dispute about how the Clayton Act was to be interpreted, the Supreme Court rejected the FTC's interpretation. In that case the Court said: "In rejecting the Government's present interpretation of Section 8, we by no means depart from our long-held policy of giving great weight to the contemporaneous interpretation of a challenged statute by the agency charged with its enforcement.... But the Government does not come to this case with a consistent history of enforcing or attempting to enforce Section 8 in accord with what it urges now."

*Bankamerica Corp. v. United States,* 462 U.S. 122, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983) (citations omitted). In *Bankamerica,* the inconsistency of the Commission's past practice with its later attempts at enforcing section 8 in a way that it had not theretofore been enforced was critical in the Supreme Court's decision to reject the FTC's more recent interpretation. Similarly, in this case, the Commission is attempting to interpret and enforce section 7A(h) in a way which is inconsistent with the agency's past practice.[3] The Supreme Court's decision in *Bankamerica* makes clear that the deference ordinarily due to an agency interpretation is not warranted in this case. *See also United States v. Leslie Salt Co.,* 350 U.S. 383, 396, 76 S.Ct. 416, 423, 100 L.Ed. 441 (1956); *Atchison, Topeka & Santa Fe Ry. v. United States,* 209 F.Supp. 35, 42 (N.D.Ill.1962) (agency's new interpretation of statute—contrary to former, longstanding view—was entitled to "no weight as an administrative determination"); and *Isbrandtsen Co. v. United States,* 96 F.Supp. 883, 890–91 (S.D.N.Y. 1951), *aff'd per curiam,* 342 U.S. 950, 72 S.Ct. 623, 96 L.Ed. 706 (1952) (when agency decisions have lacked uniformity and consistency, "administrative interpretations have little weight").

In light of the inconsistency of the Commission's practice with regard to disclosure to state attorneys general of HSR materials, and in view of the lack of specific legislative history on the question of such disclosures, it is necessary to go beyond a mere superficial examination of the words of the statute.

The Commission argues that it properly determined that it lacked authority to disclose premerger materials to state law enforcement officials. It relies principally on

---

**3.** In his dissenting statement from the Commission's decision of May 2, 1984, Commissioner Pertschuk characterized the decision as "inconsistent with the previous policy of the Commission under which HSR information had been shared with the states since at least 1979." Similarly, in her dissent Commissioner Bailey noted that "prior to this particular instance, the Commission in Hart-Scott-Rodino matters had ap-

parently routinely given non-public access to investigative materials to states on their request." Even the statement of the majority of the Commissioners, though pointing out that it had never expressly addressed this issue, recognized that in the past the General Counsel of the Commission, in the exercise of his authority, had released HSR materials to state attorneys general on a strictly confidential basis.

the language of section 7A(h) which provides:

> Any information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to *this section* shall be exempt from disclosure under section 552 of title 5 [the Freedom of Information Act], and *no such information or documentary material may be made public,* except as may be relevant to any administrative or judicial action or proceeding. Nothing in this section is intended to prevent disclosure to either body of Congress or to any duly authorized committee or subcommittee of the Congress. [Emphasis added.]

The Commission also places heavy emphasis on the House Report on Title II of the Hart-Scott-Rodino Act which describes the purposes of section 7A(h) as being to ensure:

> that premerger information submitted under this section is confidential and may not be disclosed, except in judicial or administrative proceedings.

H.R.Rep. No. 1373, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad. News 2572, 2638. The House Report is otherwise silent as to the underlying policy behind section 7A(h).

Lastly, the Commission cites some remarks of Representative Rodino, in which he compared the confidentiality provision of Title I with Title II of the HSR Act, as the clearest indication of congressional understanding with respect to the type of disclosure sought in this case. Title I amended the Antitrust Civil Process Act of 1962 (76 Stat. 548), which authorized the Department of Justice to investigate antitrust violations by a special form of compulsory process, the civil investigative demand ("CID"). In Title I of HSR (at 90 Stat. 1388) Congress reenacted the prohibition in the 1962 Civil Process Act (76 Stat. 550) that no documentary information provided in response to a CID "shall be made available for examination" by anyone other than the Department of Justice (or certain other specified persons) without the consent of the party providing the information

(15 U.S.C. § 1313). This precluded disclosure to state officials without the consent of the party providing the information. *See Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 571, 103 S.Ct. 1356, 1363, 75 L.Ed.2d 281 (1983). Against this background Representative Rodino explained:

> The House applied the *same two confidentiality safeguards to premerger data that both the House and Senate bills applied to CID files compiled pursuant to title I* of the compromise bill. These two safeguards provide that, first, the premerger data is exempt from the Freedom of Information Act, so that the Government cannot be forced to disclose it to the public, and second, *the Government agencies themselves cannot discretionarily release premerger data to anyone,* but can disclose it only in "judicial or administrative proceedings." In contrast, the Senate bill made the premerger data "subject" to the Freedom of Information Act—not exempt from it. The compromise bill adopts the House provisions because premerger data compiled pursuant to title II of the compromise bill will, in essence, contain the same kind of information as a CID file compiled in a premerger investigation pursuant to title I of the compromise bill. The House conferees see no reason why this data should be exempt from the Freedom of Information Act in the one case, and subject to the act in the other.

122 Cong.Rec. 30877 (Sept. 16, 1976) (remarks of Rep. Rodino) (emphasis added). The Commission views Representative Rodino's remarks quoted above as strong evidence that Congress intended for section 7A(h) of the Clayton Act to prohibit discretionary release of premerger data to state attorneys general under terms of strict confidentiality. However, Representative Rodino's remarks do not reveal whether such disclosure was squarely considered in the congressional hearings. Further, to understand the purpose and import of Representative Rodino's remarks, they must be considered in the context in which they were made. In the Senate version of Title II of the HSR Act first adopted, it was

provided that HSR premerger materials would be subject to the Freedom of Information Act:

> The fact of the filing of the notification required by this section and all information and documentary material contained therein shall be considered confidential under Section 1905, title 18, United States Code, until the fact of such filing or of the proposed merger or acquisition is public knowledge, at which time such notification, information, and documentary material shall be subject to the provisions of section 552(b), title 5, United States Code [Freedom of Information Act]. Nothing in this section is intended to prevent disclosure to any duly authorized committee or subcommittee of the Congress, to other officers or employees concerned with carrying out this section or in connection with any proceeding under this section.

Sen.Rep. No. 94–803, 94th Cong., 2d Sess. 67 (1976). Representative Rodino's remarks were made in the context of comparing the Senate version of the bill, in which disclosure of premerger materials to the public could have been required pursuant to the Freedom of Information Act, to the compromise bill, which prohibited the Commission and the Justice Department from disclosing premerger material to the *public*. Nothing in Representative Rodino's remarks, when taken in context, refers to *nonpublic* disclosure. Thus the Commission has failed to show that the question of nonpublic disclosures to state attorneys general was squarely considered by Congress, nor has it shown that such disclosures were a concern of Congress when it enacted section 7A(h) of the Clayton Act.

The plaintiffs argue that the prohibition against public disclosures found in section 7A(h) of the Clayton Act simply does not apply to nonpublic disclosures made to state attorneys general for the purposes of law enforcement activities. Their argument turns on the question of how the term "public" should be interpreted in the context of section 7A(h) of the Clayton Act.

As the plaintiffs point out, federal courts have recognized the distinction between public and nonpublic disclosure of Commission materials and information. Specifically, in *Interco, Inc. v. FTC*, 490 F.Supp. 39 (D.D.C.1979), the district court considered, under the pre-1980 version of section 6(f) of the FTC Act, 15 U.S.C. § 46(f), Interco's challenge of the requests of 22 state attorneys general for access to Commission materials and information for purposes of determining if any state antitrust violations existed. Like section 7A(h) of the Clayton Act, the pre-1980 version of section 6(f) of the FTC Act did not explicitly provide for access to Commission investigative materials to state law enforcement agencies. It provided that:

> The Commission shall also have the power ... (f) to make public from time to time such portions of the information obtained by it hereunder, *except trade secrets and names of customers*, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.[4]

15 U.S.C. § 46(f) (1976) (emphasis added). The pre-1980 version of section 6(f) of the FTC Act, like the present version of section 7A(h) of the Clayton Act, clearly restricted the disclosure of investigative materials by the FTC. Ironically, in *Interco* the Commission, in interpreting the pre-1980 version of section 6(f) of the FTC Act, took the very position that it opposes in this case—that the Commission had wide discretion to release documents obtained pursuant to an investigation to state attorneys general who had given the Commission reasonable assurances that the documents would not be released to the public. In *Interco*, the

---

**4.** Section 6(f) of the FTC Act was amended in 1980. For the amended version see note 5 *infra*.

court agreed with the Commission's position. The court specifically recognized the distinction between "public" and "nonpublic" disclosure of Commission information. Further, the court specifically held that the release of "trade secrets" and "names of customers" to state attorneys general under commitments of confidentiality was not a "public disclosure" and thus would not violate that statute's prohibition against making such information "public." *Interco, Inc. v. FTC*, 490 F.Supp. at 44. The plaintiffs argue that the *Interco* analysis of the pre-1980 version of section 6(f) leaves no doubt that Commission disclosure to state attorneys general is nonpublic disclosure in the context of the Clayton Act as well as the FTC Act.

The Commission, on the other hand, would have this court disregard the *Interco* decision simply because its construction of the term "make public" did not involve section 7A(h) of the Clayton Act and it was not decided until three years after the enactment of section 7A(h). These distinctions are unpersuasive. This court finds itself now facing much the same question as was faced by the district court in *Interco* in 1979. One of the questions presented to the court then was whether, assuming that some of the documents in question were "trade secrets" or "customer lists" and were therefore by the plain terms of the statute then in question not to be "made public," the release of those documents to state attorneys general under commitments of confidentiality would constitute a "public disclosure." Here, section 7A(h) of the Clayton Act prohibits "public" disclosure of HSR materials and the question is whether nonpublic disclosure to state attorneys general under commitments of confidentiality would violate the prohibition against making such information "public."

Both sections 7A(h) of the Clayton Act and 6(f) of the FTC Act were designed to protect the confidentiality of information provided to the Commission or the Department of Justice (*e.g.* trade secrets, customer lists, or commercial or financial information). As such, the plaintiffs argue, the "made public" and "make public" prohibition of each statute should be read *in pari materia*. There is considerable authority for the plaintiffs' contention here.

In *Northcross v. Memphis Board of Education*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), the Supreme Court held that provisions of two statutes that use similar language and have a common *raison d'etre* should be interpreted *in pari passu*. More recently, the Second Circuit has held that use of the same language in various enactments dealing with the same subject matter is a strong indication that the statutes should be interpreted to mean the same thing. *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 720 (2d Cir.1980). *See also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (statutes with common purpose with terms that are *in haec verba* should be construed similarly). Thus, the similar language and common purpose of section 6(f) of the FTC Act and section 7A(h) of the Clayton Act strongly suggest that disclosures of HSR related materials to state enforcement agencies under terms of strict confidentiality should not be construed as "public" disclosures and, consequently, should not be prohibited.

The legislative history of section 6(f) of the FTC Act subsequent to the *Interco* decision further supports the conclusion that disclosures to state attorneys general of Commission materials should not be prohibited as "public" disclosures. The year following *Interco*, the FTC Improvements Act of 1980, 94 Stat. 374, amended section 6(f) to codify the result of *Interco* by making explicit the Commission's authority to share information with state law enforcement agencies.[5] The purpose in amended

---

5. The amended version of section 6(f) provides: The Commission shall also have power ... (f) [t]o make public from time to time such portions of the information obtained by it hereunder as are in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to pro-

section 6(f) was stated clearly in the Congressional hearings by Congressman Richardson Preyer (D.N.C.):

In section 3(a) and section 14 of the bill, amending Section 6(f) and adding a new section 21 to the FTC Act, we intended to confirm the Commission's policy of providing documents and information on a nonpublic basis to Federal law enforcement agencies and to State attorneys general for State law enforcement purposes. This sharing of information is in the best spirit of Federal-State cooperation. It enhances the States' ability to remedy, in a matter chosen by the State, economic activities that had adversely affected their citizens. It saves taxpayers' money by minimizing the duplication of efforts and by reducing the time and effort necessary to conduct State investigations.

The purpose of these provisions ... is intended to prevent situations like those occurring in two recent cases. In one, Interco, Inc. against FTC, it took some 17 months of litigation before the Commission was free to disclose documents to more than 20 State attorneys general. In another, Martin Marietta Corp. against FTC, the Commission spent four months discussing the proposed disclosure with the company personnel, then was enjoined from disclosing the document for another 8 months before the Commission could disclose it.

126 Cong.Rec. 11,831 (1980).

The 1980 amendment to section 6(f) and its legislative history explicitly demonstrate Congressional intent to create a Federal-State sharing of information. Cases construing the amended section 6(f) confirm this view. *See Fleming v. FTC,* 670 F.2d 311, 314–15 (D.C.Cir.1982) (amendment of section 6(f) by Congress in 1980 "codified

the Commission's theretofore presumed authority and concomitant policy to share nonpublic information with state law enforcement officials"), and *Jaymar-Ruby, Inc. v. FTC,* 651 F.2d 506, 512 (7th Cir. 1981) (the purpose of the 1980 amendment to section 6(f) "was to expedite the flow of information from federal to state law enforcement officials, in part by eliminating the judicial obstacles which had previously impeded the flow").

■ In light of the above discussion, this court concludes that section 7A(h) of the Clayton Act does not prohibit disclosure of HSR materials to state attorneys general under terms of strict confidentiality. This conclusion is mandated by prior federal case law, later codified, which explicitly distinguished public disclosures from nonpublic disclosures in the context of the transfer of sensitive business information from the FTC. *Interco, Inc. v. FTC, supra.* Disclosure to state attorneys general of materials which, according to the plain language of the statute there in question (the pre-1980 version of section 6(f) of the FTC Act), were not to be made "public," was specifically held to be nonpublic disclosure and not violative of the prohibition against public disclosure. Furthermore, the legislative history of the 1980 amendment to section 6(f) of the FTC Act makes it abundantly clear that the Congress felt that it was sound public policy and in the interests of the nation's taxpayers to foster cooperation between the Commission and the states through the nonpublic sharing of information acquired by the FTC with the states.

This conclusion in no way suggests that section 6(f) of the FTC Act, as amended in 1980, amended or repealed by implication the confidentiality provisions of section

---

vide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use: *Provided,* That the Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential, except that the Commission may disclose such information

... to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such ... State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.
15 U.S.C. § 46(f) (Supp.1980).

7A(h) of the Clayton Act. This court has merely followed well settled rules of statutory interpretation in order to construe the meaning of a statute in the face of a question which the Congress did not squarely consider in the enactment of the statute. The language and purpose of section 6(f) of the FTC Act are quite similar to the language and purpose of section 7A(h) of the Clayton Act. While the legislative history of section 7A(h) of the Clayton Act is silent as to whether disclosures of HSR materials to state attorneys general are public or nonpublic disclosures, the language and legislative history of the amendment to section 6(f) of the FTC Act make it abundantly clear that disclosures otherwise not to be made public could be made on a nonpublic basis to the state attorneys general under that statute. Furthermore, the public policies and interests that precipitated the amendment to section 6(f) of the FTC Act are no less applicable to section 7A(h) of the Clayton Act. Once again, this does not suggest that the amendment to section 6(f) altered any prior understanding of section 7A(h) of the Clayton Act. As the court said in *Fleming v. FTC,* the 1980 amendment to section 6(f) of the FTC Act codified the Commission's *theretofore presumed authority* to share nonpublic information with state law enforcement officials. Similarly, section 6(f) is used in this case only as guidance as to what the unexpressed but presumed intent of Congress was in 1976 when it enacted section 7A(h) of the Clayton Act. Common sense, reasons of sound public policy, and consistent interpretation of statutes with similar language and common purpose, inexorably lead to the conclusion that it was not the intent of Congress to prohibit nonpublic disclosures of HSR materials to state attorneys general when it enacted section 7A(h) of the Clayton Act.

Having decided that section 7A(h) of the Clayton Act does not prohibit nonpublic disclosures of HSR materials to state attor-

neys general on a confidential basis, the question that remains is whether there is any affirmative grant of power to the Commission authorizing such disclosures. The plaintiffs point to section 6(f) of the FTC Act as authorizing such disclosure.[6] Their point is well taken. The language of section 6(f), as amended, provides that the Commission "may disclose" commercial or financial information which is obtained from any person and which is privileged or confidential "to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such ... State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes." Thus, the plain language of section 6(f) of the FTC Act, as amended, as well as the legislative history of the 1980 amendment, leaves no doubt that Congress intended that there be a federal-state sharing of information acquired by the FTC pursuant to its investigations. See pp. 675–676 *supra.*

The Commission argues, however, that section 6(f) of the FTC Act does not apply to premerger materials. Rather, the Commission held in its May 2, 1984 decision and asserts in its memorandum in support of its motion in this case, that by its very terms, section 6(f) governs only treatment of information obtained by the Commission "hereunder," that is, information obtained under the FTC Act. Since information obtained under the premerger provisions of section 7A of the Clayton Act is not, according to the Commission, obtained under the FTC Act, the Commission argues that section 6(f) of the FTC Act may not be read as a grant of authority to disclose information obtained pursuant to section 7A of the Clayton Act.

While the Commission's reading of section 6(f) may be grammatically plausible, it is at best a strained and narrow interpretation. In response to the Commission's

---

**6.** It has been suggested that the Commission could release HSR materials to States under the express authority of section 7A(h) of the Clayton Act which authorizes such release where the information "may be relevant to any administrative or judicial action or proceeding." *See* Dissent of Commissioner Pertschuk, 3 Trade Reg.Rep. (CCH) ¶ 22,146.

reading of the term "hereunder" in section 6(f), the plaintiffs suggest that the word "hereunder" qualifies only public disclosures, is inapplicable to a request for nonpublic disclosure of information to state attorneys general, and therefore does not restrict the Commission's authority to disclose information to state attorneys general only to information obtained "under" the FTC Act.

Regardless of whether the word "hereunder" in section 6(f) of the FTC Act grammatically qualifies nonpublic disclosure to state attorneys general, it cannot be read to restrict disclosures of information to disclosures "under" the FTC Act as distinct from the Clayton Act. Case law construing section 5 of the FTC Act, to which section 6 is quite closely related, makes it "clear that the FTC Act was designed to supplement and bolster ... the Clayton Act." *FTC v. Motion Picture Advertising Service Co., Inc.,* 344 U.S. 392, 394–95, 73 S.Ct. 361, 363, 97 L.Ed. 426 (1953). Similarly, the FTC Act "has been interpreted as a complement to the Sherman and Clayton Acts." *Luria Brothers and Company v. FTC,* 389 F.2d 847, 859 (3d Cir.1968). It has also been held that the "Commission is empowered to use Section 5 [of the FTC Act] to prohibit practices and remedy conditions ... which ... run counter to the public policy declared in the Sherman and Clayton Acts." *L.G. Balfour Co. v. FTC,* 442 F.2d 1, 8–9 (7th Cir.1971). Thus there can be no doubt that the grant of authority to the Commission to disclose information to state attorneys general found in the FTC Act should not be construed so narrowly as to preclude the Commission from exercising that grant with respect to information obtained pursuant to the Clayton Act simply because the information was not acquired literally "under" the FTC Act. The Commission's own past practice, as discussed at p. 672 & note 3 *supra,* confirms that such a narrow and restrictive reading of section 6(f) is only of recent vintage.

The specific congressional grant of authority to the Commission in section 6(f) of the FTC Act to make nonpublic disclosures to state attorneys general for law enforcement purposes and under terms of strict confidentiality must be read as a grant of discretion to the Commission to share information obtained pursuant to its investigations regardless of whether the particular investigation was made under the literal authority of the FTC Act or the Clayton Act. The broad nature of the powers granted to the Commission under the FTC Act, combined with the clear message from Congress that mandated federal-state sharing of information, must be viewed as bolstering and supplementing the specific provisions of the Clayton Act and not in contradistinction from them. *FTC v. Motion Picture Advertising Service Co., Inc., supra.* Thus, as this court has held today that section 7A(h) of the Clayton Act does not prohibit the Commission from making nonpublic disclosures of HSR materials to state attorneys general under terms of strict confidentiality, so too does this court hold today that section 6(f) of the FTC Act is an affirmative grant of power to the FTC—that it "may disclose" such information to state attorneys general under terms of strict confidentiality and in a nonpublic fashion.[7]

Finally, the Commission points out that pursuant to a liaison agreement between itself and the Justice Department, after learning of a proposed acquisition they decide which agency will investigate it and take necessary law enforcement action. 2 Trade Reg.Rep. (CCH) ¶ 8550 (1984). Further, the Commission submitted an affidavit of J. Paul McGrath, Assistant Attorney General of the Antitrust Division of the Department of Justice, in which Mr. McGrath asserts that it has been the longstanding view of the Department of Justice that section 7A(h) of the Clayton Act prohibits the Justice Department from disclos-

---

7. This court does not reach the question of what the standard of review of the Commission's exercise of its discretion under section 6(f) is. However, it is acknowledged that the case of

*Fleming v. FTC,* 670 F.2d 311 (D.C.Cir.1982), provides some guidance as to what that standard is.

ing to state attorneys general all files and materials obtained by the Antitrust Division under the premerger notification provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and that the Antitrust Division has adhered to this interpretation since the Act became effective. Affidavit of J. Paul McGrath, ¶ ¶ 3, 4. Given the longstanding practice of the Justice Department not to disclose HSR materials, the Commission argues that under this court's construction of section 7A(h) of the Clayton Act, the confidentiality of premerger materials submitted by a corporation under section 7A of the Clayton Act would be dependent upon the fortuity of which antitrust agency was chosen to investigate a particular acquisition.

The extent to which the Justice Department has the authority to disclose investigative materials is governed by section 4F(b) of the Clayton Act, enacted as part of Title III of the Hart-Scott-Rodino Antitrust Improvement Act of 1976, which provides:

> To assist a state attorney general ... in bringing any action under this Act, the Attorney General of the United States shall, upon request by such State Attorney general, make available to him, *to the extent permitted by law,* any investigation files or other materials which are or may be relevant or material to the actual or potential cause of action under this Act.

15 U.S.C. § 15f(b) (1982) (emphasis added). As the Commission itself notes, section 4F directs the Attorney General of the United States to provide states with investigative files "to the extent permitted by law." Thus the Justice Department's authority to disclose premerger information under section 4F(b) of the Clayton Act depends in turn on the construction of section 7A(h). Today, this court has construed section

7A(h)' as not prohibiting nonpublic disclosures of HSR materials to state attorneys general. It is well settled that statutory interpretation is ultimately the function of the courts, and that courts, rather than administrative agencies, are experts in statutory construction. *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). Thus, as per today's decision, nonpublic disclosures of HSR materials to state attorneys general are permitted by law at the discretion of both the Justice Department and the Federal Trade Commission. The Commission's position that disclosure by it would create an anomaly in federal antitrust enforcement is, therefore, without merit.

### Conclusion

In conclusion, section 7A(h) of the Clayton Act does not prohibit the Federal Trade Commission from disclosing HSR materials to state law enforcement authorities. The Commission has the authority to make such nonpublic disclosures at its discretion.[8] The plaintiffs' motion for summary judgment is granted. The defendant Commission's cross-motion for summary judgment is denied. Judgment shall enter in favor of plaintiffs pursuant to 28 U.S.C. § 2201.

SO ORDERED.

---

**8.** This court acknowledges that in a recent case in the Western District of Texas the court was faced with substantially the same question as presented here and came to the opposite conclusion. *See Mattox v. FTC,* Civ. No. A 84 CA 401 (W.D.Tex. filed July 10, 1984). In *Mattox,* Judge Nowlin held, without elaboration, that the plain language of section 7A(h) and the legislative history of the Hart-Scott-Rodino Act prohibited disclosure by the Commission of HSR materials to the Attorney General of the State of Texas. For the reasons discussed at length above in this opinion, this court respectfully disagrees.