# Inter-Departmental Disclosure of Information Submitted Under the Shipping Act of 1984

The Federal Maritime Commission is not prohibited by § 6(j) of the Shipping Act of 1984 (Act) from disclosing to other Executive Branch departments or agencies information concerning carriage agreements filed pursuant to the Act, although the Act does prohibit disclosure of such information to the public.

Section 6(j) of the Act is patterned after § 7A(h) of the Clayton Act, and the legislative history of the latter provision provides some indication that it might prohibit inter-departmental disclosure of premerger information obtained by the Justice Department under the Hart-Scott-Rodino Act. Nonetheless, in the absence of evidence of legislative intent specifically to prohibit non-public disclosure of Shipping Act information, it should not be inferred that Congress intended to override the general presumption that information obtained by one federal government agency may be freely shared among federal government agencies.

February 8, 1985

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
FEDERAL MARITIME COMMISSION

This responds to your inquiry whether § 6(j) of the Shipping Act of 1984 (Act), 46 U.S.C. app. § 1705(j), prohibits disclosure by the Federal Maritime Commission (Commission) of information and documentary material filed with the Commission under §§ 5 or 6 of the Act to other federal agencies or Executive Branch departments. Your request for an interpretation of § 6(j) arises in the context of certain international water carriage agreements filed or to be filed with the Commission that involve shipping routes with countries that have entered into bilateral agreements with the United States. The Commission may wish to disclose the information filed with those agreements to the Departments of State and Transportation when the bilateral agreements are renegotiated. Assuming that § 6(j) does not create an absolute prohibition against disclosure, your letter also inquires whether § 6(j) prohibits the Commission from disclosing such information to other federal agencies or Executive Branch departments where there is a showing that the information is necessary for the development of United States foreign policy objectives with respect to international shipping.

In this memorandum, we consider the language and legislative history of § 6(j). We also consider § 7A of the Clayton Act, 15 U.S.C. § 18a, upon which the Shipping Act is expressly modeled. For the reasons discussed below, we do

48

not believe § 6(j) prohibits disclosure of Shipping Act information to other federal government agencies in general or, in particular, disclosure in furtherance of the development of the Executive's foreign policy objectives in international shipping.

## I. Section 6(j) of the Shipping Act of 1984

The Shipping Act of 1984 authorizes the Commission to receive for filing certain agreements that, if not declared unlawful by the Commission or the courts, are exempt from the antitrust laws. 46 U.S.C. app. §§ 1703–1706. The Act also authorizes the Commission to describe the form and manner in which an agreement is to be filed and, under § 6(d), to require the submission of such information and documents as may be necessary to evaluate the agreement under the substantive standard set forth in § 6(g).[1] 46 U.S.C. app. §§ 1704–1705.

Section 6(j) of the Act provides:

*Nondisclosure of submitted material*

> Except for an agreement filed under [§ 5], information and documentary material filed with the Commission under [§ 5] is exempt from disclosure under section 552 of Title 5 [the Freedom of Information Act] and may not be made public except as may be relevant to an administrative or judicial action or proceeding. This section does not prevent disclosure to either body of Congress or to a duly authorized committee or subcommittee of Congress.

The Commission has promulgated regulations to implement the Act. *See* 49 Fed. Reg. 22296 (1984); 49 Fed. Reg. 24697 (1984) (codified at 46 C.F.R. Part 572). The regulations also provide for the confidential treatment of submitted material:

> (a) Except for an agreement filed under section 5 of the Act, all information submitted to the Commission by the filing party will be exempt from disclosure under 5 U.S.C. 552. Included in this disclosure exemption is information provided in the Information Form, voluntary submissions of additional information, reasons for noncompliance, and replies to requests for additional information.

---

[1] Section 6(g) provides:

*Substantially anticompetitive agreements*

If, at any time after the filing or effective date of an agreement, the Commission determines that the agreement is likely, by a reduction in competition, to produce an unreasonable reduction in transportation service or an unreasonable increase in transportation cost, it may, after notice to the person filing the agreement, seek appropriate injunctive relief under subsection (h) of this section.

46 U.S.C. app. § 1705(g).

(b) Information which is confidential pursuant to paragraph (a) of this section may be disclosed, however, to the extent: (1) It is relevant to an administrative or judicial action or proceeding; or (2) It is in response to a request from either body of Congress or to a duly authorized committee or subcommittee of Congress.

46 C.F.R. § 572.608.[2]

On its face, § 6(j) merely prohibits public disclosure of information and materials filed with agreements under the Act.[3] Because the Commission proposes to disclose Shipping Act information to other federal government agencies, the relevant question here is whether § 6(j) also prohibits non-public disclosure of such information.

The legislative history of the Act is not helpful in answering this question. The report of the Senate and House conferees on S. 47, the bill which became the Shipping Act, merely states that "subsection (j) provides for confidential treatment of any information submitted under this section." H.R. Conf. Rep. No. 600, 98th Cong., 2d Sess. 30 (1984), *reprinted in* 1984 U.S.C.C.A.N. 283, 286. The House Report to accompany H.R. 1878, which was not enacted, explains that the provision for confidential treatment in that bill grants an exemption under the Freedom of Information Act for all information and documentary materials, other than the agreement itself, that have been submitted to the Commission pursuant to §§ 4 and 5. H.R. Rep. No. 53 (II), 98th Cong., 1st Sess. 31 (1983), *reprinted in* 1984 U.S.C.C.A.N. 167, 251. The original bill, S. 47, contained no comparable section providing for confidential treatment of submitted materials. No Senate Report was submitted with this legislation. The legislative history otherwise appears to be silent with regard to the confidentiality provision.

Thus, nothing in the language or the legislative history of § 6(j) expressly prohibits the type of non-public disclosure contemplated here of confidential information submitted under the Shipping Act.

---

[2] The Federal Register contains supplementary information explaining the Shipping Act regulations. The description of Subpart F of the Rules, covering Action on Agreements, states that § 6 "preserves the confidentiality of information submitted with agreements." 49 Fed. Reg. at 22302. It further states, in reference to 46 C.F.R. § 572.608, that "[s]ection 6(j) of the Act provides that all information submitted by a filing party other than the agreement itself shall be exempt from disclosure under the Freedom of Information Act [5 U.S.C. § 552]. This section of the rules implements the Act's confidentiality provision " 49 Fed. Reg. at 22303.

[3] Section 6(j) of the Act qualifies as an exemption (b)(3) statute under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(3). FOIA "does not apply to matters that are specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters are withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* The Office of Legal Policy, Office of Information and Privacy, does not interpret exemption (b)(3) statutes, in general, to prohibit inter-agency disclosures of information.

## II. Section 7A of the Clayton Act, 15 U.S.C. § 18a

The agreement review procedure established under § 6 of the Shipping Act is modeled expressly on the procedures governing premerger clearance of proposed acquisitions and mergers under § 7A of the Clayton Act, as added by the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (HSR Act). *See* H.R. Conf. Rep. No. 600, at 30, *reprinted in* 1984 U.S.C.C.A.N. at 286; *see also* 49 Fed. Reg. at 22301. Section 7A(h) of the Clayton Act provides for confidential treatment of premerger information relevant to a proposed acquisition submitted for approval to the Federal Trade Commission. The relevant language of § 7A(h) is identical to § 6(j) of the Shipping Act.

The legislative history of the HSR Act concerning premerger information provides little more elucidation on the scope of the prohibition against public disclosure than the legislative history of § 6(j) of the Shipping Act. The House Report to accompany H.R. 14580, Title II of the HSR Act, merely states that "premerger information submitted under this section is confidential, and may not be disclosed, except in judicial or administrative proceedings." H.R. Rep. No. 1373, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2572, 2638. However, Chairman Rodino's remarks comparing the confidentiality provision in Title II of the HSR Act to a confidentiality provision in Title I of that Act shed some light on the meaning of the provision in Title I.

Title I amended the Antitrust Civil Process Act of 1962 by broadening the availability of civil investigative demands (CID) to investigate antitrust violations, *see generally* H.R. Rep. No. 1343, 94th Cong., 2d Sess. 1–4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2596, 2596–98, but retained the prohibition that no information produced in response to a CID "shall be available for examination, without the consent of the person who produced such [information] . . . by any individual other than a duly authorized official, employee, or agent of the Department of Justice." 15 U.S.C. § 1313(c)(3). Title I also provided that information produced in response to a CID is exempt from disclosure under the Freedom of Information Act. *Id.* § 1314(g).

Against this background, Chairman Rodino explained:

> The House applied the *same two confidentiality safeguards to premerger data that both the House and Senate bills applied to CID files compiled pursuant to title I* of the compromise bill. These two safeguards provide that, first, the premerger data is exempt from the Freedom of Information Act, so that the Government cannot be forced to disclose it to the public, and second, *the Government agencies themselves cannot discretionarily release premerger data to anyone*, but can disclose it only in "judicial or administrative proceedings." In contrast, the Senate bill made the premerger data "subject" to the Freedom of Information Act not exempt from it. The compromise bill adopts the House provisions because premerger data compiled pursuant to

51

> title II of the compromise bill will, in essence, contain the same kind of information as a CID file compiled in a premerger investigation pursuant to title I of the compromise bill. The House conferees see no reason why this data should be exempt from the Freedom of Information Act in the one case, and subject to the Act in the other.

122 Cong. Rec. 30877 (1976) (emphasis added).

We acknowledge that this statement by Chairman Rodino, one of the sponsors of the legislation, may support the argument that the confidentiality provision in Title II, § 7A(h) of the Clayton Act, when read in conjunction with the comparable provision in Title I, prohibits disclosure of premerger information to anyone outside the Department of Justice. Indeed, based upon this reading of the legislative history, the Department's Antitrust Division has interpreted § 7A(h) of the Clayton Act to prohibit even non-public disclosure of premerger information except within the Department.[4]

The Antitrust Division's interpretation as applied to disclosure to state officials was recently upheld in a case involving requests by state attorneys general for premerger information submitted by private companies under the HSR Act. *Mattox* v. *FTC*, 752 F.2d 116 (5th Cir. 1985). The court determined that disclosure to state law enforcement agencies is a "public" disclosure within the meaning of § 7A(h). Relying on the legislative history of the HSR Act discussed above and the plain language of the statute, the court concluded that disclosure of premerger information obtained under the HSR Act is strictly prohibited except as provided by § 7A(h), regardless of any assurance of confidentiality.[5] Although the court did not expressly consider whether § 7A(h) also prohibits inter-agency transfers of premerger information obtained under the HSR Act, such a result may be implicit in its holding.

We do not view the Fifth Circuit's interpretation of § 7A(h) of the Clayton Act to preclude a different interpretation of § 6(j) of the Shipping Act, however. Nor do we view the mere fact that § 6(j) is modeled on § 7A(h) as dispositive of the scope of the prohibition in § 6(j), at least insofar as that prohibition relates to disclosure of information among federal agencies. Rather, without more definitive evidence of a legislative intent to prohibit non-public disclosure of Shipping Act information specifically, we would not infer a legislative intent to overturn the general presumption that information obtained

---

[4] *See* Antitrust Division Manual (VII-15). In keeping with its narrow reading of this section, the Antitrust Division also has interpreted § 7A(h) to limit disclosure of premerger information in administrative or judicial proceedings to those proceedings to which either the Antitrust Division or the Federal Trade Commission is a party. Even in those instances, disclosure remains discretionary. *See* Antitrust Division Manual (III-21).

[5] The State of Texas had argued, *inter alia*, that § 7A(h) should be construed in light of § 6(f) of the FTC Act, 15 U.S.C. § 46(f), which authorizes the FTC to release, at its discretion, commercial or financial information, including premerger information obtained under the FTC Act, to federal or state law enforcement agencies upon prior certification "that such information will be maintained in confidence and will be used only for official law enforcement purposes." In another case, the district court found this argument persuasive and rejected the Antitrust Division's interpretation of § 7A(h) of the Clayton Act. *See Lieberman* v. *FTC*, 598 F. Supp. 669 (D. Conn. 1984).

by one federal government agency is to be freely shared among federal government agencies.[6]

It is axiomatic that all information and documents in the possession of Executive Branch agencies are within the control of the President as the head of the Executive Branch. Just as the President exercises supervisory control over the execution of the laws by his subordinates, U.S. Const. art. II, § 3, the President ensures that information within the Executive Branch is protected from disclosure that would, in his judgment, adversely affect the public interest. *See* Memorandum to Heads of Executive Branch Departments and Agencies from President Reagan (Nov. 4, 1982).

We believe it follows from these general constitutional principles that a decision by Congress to restrict the flow of information among federal agencies when such information relates to the performance of the official duties of these agencies must be executed by legislation that leaves no doubt as to Congress' intent. Particularly regarding the development by the President of his foreign policy, it would be untenable to read into the statute at issue here an implied intent to deny to those subordinates of the President charged with the formulation of foreign policy those documents and information deemed relevant to that formulation.

We would add that the President's authority to control the flow of information within and without the Executive Branch carries with it the power to limit distribution of such information within the Executive Branch. Thus, unless and until revised by higher authority, we have no doubt about the validity and enforceability of the present policy of the Antitrust Division of this Department to refuse to transmit certain information gathered by it beyond this Department. We believe the Commission is free, as a matter of law, to adopt a policy of providing the information at issue here to other federal departments and agencies that have a need for it in connection with carrying out their official responsibilities.

## Conclusion

Section 6(j) of the Shipping Act prohibits only "public" disclosure of information obtained under that Act. Interpreting the language of that statute and its

---

[6] We also have considered whether the Privacy Act, 5 U S.C § 552a, prohibits disclosure of Shipping Act information to other federal government agencies. That act governs the circumstances under which information contained in records maintained on individuals may be disclosed to the public or to other government agencies. The Privacy Act defines the term "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 552a(a)(2). The Act defines the term "record" as

> any item, collection, or grouping of information about an *individual* that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as finger or voice print or a photograph.

*Id.* § 552a(a)(4) (emphasis added) Your Office has informed us that companies or conferences of companies, and not individuals, file information and documentary material under the Shipping Act. Therefore, such material would not qualify as a "record" covered by the Privacy Act and the Privacy Act would not independently prohibit disclosure of information filed under §§ 5 or 6 of the Shipping Act.

sparse legislative history in light of the President's constitutional responsibilities regarding the control of information within the Executive Branch, we have no difficulty concluding that information and documentary material filed with the Commission under §§ 5 or 6 of the Shipping Act may be disclosed to other federal agencies or Executive Branch departments without violating § 6(j).

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*