Jim MATTOX, Attorney General for
the State of Texas,
Plaintiff-Appellant,

v.

FEDERAL TRADE COMMISSION,
Defendant-Appellee,

and

Chevron Corporation,
Intervenor-Appellee.

No. 84–1768.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1985.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Section 7A(h) of the Hart-Scott-Rodino Act of 1976 provides that premerger notification materials obtained under that act may not be "made public". The Attorney General of Texas nevertheless seeks premerger information from the Federal Trade Commission; he argues that state attorneys general who promise to keep premerger documents in confidence are not part of the § 7A(h) "public". The district court accepted the FTC's contrary interpretation. We affirm.

## I

In March 1984, Chevron Corporation and Gulf Corporation filed pre-merger notification materials with the Federal Trade Commission as required by the Hart-Scott-Rodino Act. On April 1, the Texas Attorney General requested access to pre-merger materials obtained by the FTC from Chevron and Gulf and to certain commission staff workpapers and analyses.[1] The written request assured that the Texas Attorney General "would keep confidential" all pre-merger materials shared by the FTC with Texas, except as they might be relevant to official law enforcement purposes.

The FTC had received similar requests for materials furnished in anticipation of a merger between Texaco, Inc. and Getty Oil Company. By a divided vote, it denied those requests on May 2, 1984. The Commission concluded that section 7A(h) of the Hart-Scott-Rodino Act[2] prevented its dis-

---

Jim Mattox, Atty. Gen., Thomas M. Mengler, Paul Rich, Asst. Attys. Gen., Austin, Tex., for plaintiff-appellant.

Robert M. Langer, Neil G. Fishman, Asst. Attys. Gen., Hartford, Conn., for amicus curiae States of Alaska, Cal., Conn., etc.

Joanne L. Levine, Sandra McKeown Vidas, Howard E. Shapiro, F.T.C., Washington, D.C., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for F.T.C.

Harry M. Reasoner, Houston, Tex., Pillsbury, Madison & Sutro, Richard W. Odgers, San Francisco, Cal., for Chevron.

1. In his brief to this court, the Texas Attorney General asserts that his investigation had then raised questions concerning the "effect of the acquisition on wholesale and retail marketing of gasoline in certain West Texas towns," and that he "was hoping to gain assistance from the Commission's petroleum section, which had devoted more than seventy members of its profes-

sional staff to assessing the competitive effects" of the merger.

2. Section 7A(h) of the Hart-Scott-Rodino Act, 15 U.S.C. § 18a(h):

    Any information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section shall be exempt from disclosure

closing pre-merger notification material to state law enforcement agencies regardless of any assurance that the furnished materials would be held in confidence. The request by Texas was then denied and this suit followed.[3] Connecticut, Minnesota, Pennsylvania and Rhode Island, denied access to the pre-merger notification materials filed in connection with the Texaco-Getty merger, filed a similar lawsuit. *Lieberman v. FTC*, 598 F.Supp. 669 (D.Conn. 1984). The district court there rejected, but the district court here accepted the construction given HSR by the Justice Department and the FTC. In June 1984 the Federal Trade Commission entered into a consent agreement with Chevron and Gulf, subject to final approval after public comment.

## II

### –1–

Texas first argues that the sharing of HSR data with state law enforcement agencies is not a "public" disclosure. It points out that before 1980, section 6(f) of the FTC Act[4] was phrased similarly to § 7A(h) and had been read by the courts to

> under section 552 of Title 5, and no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding. Nothing in this section is intended to prevent disclosure to either body of Congress or to any duly authorized committee or subcommittee of the Congress.

**3.** Texas sued the FTC, seeking a declaratory judgment that the agency's interpretation of § 7A(h) was contrary to law. *See* 5 U.S.C. § 706(2)(a). Chevron intervened as a defendant.

**4.** Section 6(f) of the FTC Act, 15 U.S.C.A. § 46(f) (1973):

> The Commission shall also have power—
> (f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.

allow confidential disclosure to states. *See Interco, Inc. v. FTC*, 490 F.Supp. 39 (D.D.C.1979); *Jaymar-Ruby, Inc. v. FTC*, 651 F.2d 506, 510 n. 10 (7th Cir.1981). Texas further notes that Congress explicitly accepted this interpretation in 1980 when it amended 6(f)[5] to allow the FTC to disclose trade secrets:

> to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such Federal or State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.

To its argument that legislative provisions, similar in language and purpose, ought to be similarly interpreted, Texas adds that the legislative history of amended § 6(f) demonstrates that in amending it Congress expressed a policy favoring the FTC's sharing of data on a confidential basis with state attorneys general, a policy that should inform the reading of 7A(h) of HSR, enacted four years earlier. Texas directs our attention to the House Conference Report on amended § 6(f) which states:

**5.** Amended Section 6(f) of the FTC Act, 15 U.S.C.A. § 46(f) (Supp.1984):

> The Commission shall also have power—
> (f) To make public from time to time such portions of the information obtained by it hereunder as are in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use: *Provided,* That the Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential, except that the Commission may disclose such information to officers and employees of appropriate Federal law enforcement agencies or to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such Federal or State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.

The Conference substitute has also amended the prohibitions on disclosure in Sections 3 and 15 of the Senate bill to permit the Commission to continue sharing information with Federal, as well as State, law enforcement agencies for official law enforcement use if the agency certifies that such information will be maintained in confidence. This change is made to assure effective coordination within the Government and to eliminate needlessly duplicative information requests to private persons. . . .

That is, the Commission is permitted to provide documents to another agency, even if public disclosure were otherwise prohibited, if the agency requests the material in connection with any criminal, civil or administrative proceeding, or any investigation potentially resulting in such a proceeding.

H.R. Conference Rep. No. 96–917, 96th Cong., 2d Sess. 33, *reprinted in* 1980 U.S. Code Cong. & Admin.News 1073, 1150.

The argument continues that a governmental policy of cooperating with states in the enforcement of the antitrust laws requires a tandem reading of § 7A(h) and § 6(f), and that nothing in the congressional history of HSR is inconsistent with such disclosures. Finally, Texas urges that the decision by the Federal Trade Commission not to release these materials is entitled to little, if any, weight.

The FTC and Chevron, in turn, urge that the plain language of § 7A(h) prevents the release of materials obtained under its provisions, and that this interpretation is supported by basic principles of statutory construction as well as the legislative history of the statute. They argue that § 6(f), a disclosure statute, is inapposite to any interpretation of § 7A(h), a provision designed to restrict the dissemination of information. They further contend that the construction given the statute by the enforcing agency is entitled to deference. In addition to the FTC's May 2 ruling, the defendants point to the position of the Department of Justice, the co-enforcer of Hart-Scott-Rodino, that § 7A(h) bars the disclosure of HSR information to state attorneys general.[6]

–2–

We begin with the Act itself. The 1976 Hart-Scott-Rodino Act has three titles. See generally Pub.L. No. 94–435, 90 Stat. 1383 (July 30, 1976).[7] Title I expanded the civil investigatory power of the Department of Justice Antitrust Division to include requests for depositions and interrogatories. It also established "detailed controls over the Division's use of CID information, in order to protect the confidentiality of these investigative files." H.R.Rep. No. 94–1343, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2572, 2596, 2598. It contains its own nondisclosure provision. *See* 15 U.S.C. § 1313(c)(3).

Title II requires parties to certain acquisitions to file pre-merger notification materials with either the FTC or the Department of Justice and to wait a statutorily defined period of time before proceeding with the merger. The statute was designed to allow review of mergers before they were completed. It reflects a congressional judgment that divestiture and other post-acquisition remedies were difficult, expensive and sometimes futile. It was thought that Title II of the Act would give the government:

a meaningful chance to win a premerger injunction—which is often the only effective and realistic remedy against large, illegal mergers—before the assets, technology, and management of the merging firms are hopelessly and irreversibly scrambled together, and before competition is substantially and perhaps irremed-

6. The defendants submitted the affidavit of J. Paul McGrath, the Assistant Attorney General for the Antitrust Division, who stated that to the best of his knowledge, "the Antitrust Division has adhered to this interpretation since the Act became effective."

7. The three titles were codified in different places: Title I in 15 U.S.C. §§ 1311–1314 and 18 U.S.C. § 1505; Title II in 15 U.S.C. § 18a; and Title III in 15 U.S.C. § 15c–15h.

iably lessened, in violation of the Clayton Act.

H.R.Rep. No. 94–1373, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2572, 2637, 2637.

In Title III, Congress empowered state attorneys general to enforce federal antitrust laws by the filing of parens patriae suits on behalf of citizens. Congress directed the Justice Department to make available to state attorneys general materials for use in the prosecution of such suits but only "to the extent permitted by law." 15 U.S.C. § 15f(b).

The three Titles of HSR are traceable to three distinct bills passed by the House in early 1976. On June 10, 1976 the Senate passed its version called Hart-Scott but it was refused by the House. In the summer of 1976, an informal conference was formed and in September of 1976 the conference compromise was accepted by both houses and signed by the President.

The Senate Bill would have permitted wide disclosure of the required premerger notification materials. The materials would have been subject to the Freedom of Information Act, making them available to anyone on demand. The conference rejected the Senate's approach to the disclosure of the required merger materials and adopted the confidentiality provision now embodied in § 7A(h). On the bill's return to the House, Congressman Rodino explained:

> The House applied the same two confidentiality safeguards to premerger data that both the House and Senate bills appl[y] to CID [civil investigative demand] files compiled pursuant to Title I * * *. These two safeguards provide that, first, the premerger data is exempt from the Freedom of Information Act, so that the Government cannot be forced to disclose it to the public, and second, *the Government agencies them-*

*selves cannot discretionarily release premerger data to anyone,* but can disclose it only in "judicial or administrative proceedings."

Mr. Rodino continued:

> The compromise bill adopts the House provisions, because premerger data compiled pursuant to Title II will, in essence, contain the same kind of information as a CID file compiled in a premerger investigation pursuant to Title I.

122 Cong.Rec. 30877 (1976) (emphasis added). The confidentiality accorded CID materials referred to by Rodino was that "CID materials may not be disclosed to persons outside the Federal government without the consent of the provider." *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 571, 103 S.Ct. 1356, 1363, 75 L.Ed.2d 281 (1983).

By its language, the only disclosures permitted by § 7A(h) are in connection with ongoing administrative and judicial proceedings and in communication with the Congress and its committees. Although maxims of statutory construction are often analytically impotent, we view Congress's authorization of specific disclosures in § 7A(h) as evidence that the statute's prohibition of disclosure was otherwise meant to be universal.[8] This literal reading is supported by Congressman Rodino's contemporaneous explanation.

–3–

■ In Texas's view, Representative Rodino's reference to the confidentiality of CID materials was only an explanation that the conference bill rejected the Senate's approach of subjecting HSR materials to the Freedom of Information Act, and is irrelevant to the question of disclosure to state attorneys general. Texas further asserts that great reliance should not be placed upon the statements of a single member of the Congress. Although a single legislative sponsor's statements do not

---

**8.** There had in fact been ongoing litigation during the year that Congress was debating HSR disputing the FTC's authority to disclose trade secrets to Congress under the pre-1980 § 6(f) of the FTC Act. *Ashland Oil, Inc. v. FTC,* 409 F.Supp. 297 (D.D.C.1976), *aff'd,* 548 F.2d 977 (D.C.Cir.1976). In light of *Ashland,* Congress, in adding § 7A(h)'s express exceptions, may well have decided not to rely on any presumption that § 7A(h) had implied loopholes.

control our interpretation of a statute, *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), they "deserve[ ] to be accorded substantial weight[.]" *FEA v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976).

The weight to be assigned Representative Rodino's remarks aside, they are plain. Without qualification, Mr. Rodino stated that premerger information could not be "discretionarily release[d]" to "anyone." This reading is also supported by Senator Hruska's proposed amendment to the original Senate bill. In explaining his amendment, identical to what ultimately became § 7A(h), Senator Hruska told his colleagues:

> Second, the proposed addition ... requires the Federal Trade Commission and the Assistant Attorney General to keep notification information confidential, except that appropriate congressional inquiry is permitted. The confidentiality provision will insure that respondents are not prejudiced by submitting confidential information concerning a proposed merger or acquisition."

122 Cong.Rec. 15812 (May 27, 1976). Although these legislative statements may not definitively reject Texas's position, they support a reading of § 7A(h) that favors confidentiality over disclosure in uncertain cases.

–4–

Texas urges that § 7A(h) is not ambiguous, and that its phrase "made public" does not prevent disclosure of premerger materials to a state attorney general who has assured their confidentiality. The argument largely rests upon the assertion that § 7A(h) of the Clayton Act and § 6(f) of the Federal Trade Commission Act are *"in pari materia "* in that they deal with the same subject matter. Because this argument requires exploration of the reach of § 6(f) of the FTC, and because Texas also

argues that § 6(f) allows disclosure of HSR materials independently of HSR, we will treat both arguments together.

The FTC Act grants authority to the FTC to "gather and compile information," 15 U.S.C. § 46(a), pertaining to any "unfair methods of competition ... and unfair or deceptive acts ..." 15 U.S.C. § 45(a)(1). As earlier noted, the 1980 FTC Improvement Act modified this provision so as to allow the Commission "to make public from time to time such portions of the information obtained by it *hereunder* as are in the public interest ... *provided,* that the Commission shall not have any authority to make public any trade secrets or any commercial or financial information which is ... privileged or confidential, except that the Commission may disclose such information ... to any state law enforcement agency upon the prior certification of ... such agency." (emphasis added).

Texas urges that whatever be the strictures on the release of data contained in HSR, § 6(f) is an independent grant of authority for their disclosure. To the extent that this argument rests upon the notion that the 1980 amendment to the FTC Act contained an implied repeal of the confidentiality constraints of HSR, we reject it. There is no indication in the legislative history of the 1980 Act that Congress intended the new § 6(f) to modify § 7A(h). "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Because § 6(f) deals only with materials obtained "hereunder" —that is, under the FTC Act[9]—and HSR materials are obtained under the Clayton Act, the statutes do not conflict. Furthermore, the FTC Improvement Act itself states that nothing in it supersedes any statutory provision which expressly prohib-

---

**9.** "We construe 'hereunder' in the quoted phraseology as applying to the entire chapter 2 of Title 15 U.S.C. [the FTC Act], restricted of course by the specific limitations set forth in the

chapter itself." *FTC v. Cinderella Career & Finishing Schools, Inc.,* 404 F.2d 1308, 1314 (D.C. Cir.1968).

its disclosures by the Commission. *See* 15 U.S.C. § 57b–2(e).

▪ Reference to the FTC Act can aid Texas only insofar as it lends support to the argument that its provisions provide a guide to the meaning of HSR. While it is true that § 6(f) of the FTC Act was read to allow disclosure to attorneys general before the 1980 amendment, we are unpersuaded that §§ 6(f) and 7A(h) are analogous enough to be interpreted identically. To begin with, *in pari materia* finds its greatest force "when the statutes are enacted by the same legislative body at the time." *Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972); *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 734 n. 14, 97 S.Ct. 2061, 2068 n. 14, 52 L.Ed.2d 707 (1977). Section 7A(h) and the original § 6(f) were enacted sixty-two years apart.

More significantly, the FTC Act expressly authorizes the Commission to make public the information it obtains under the FTC Act, except for trade secrets which may be released only to state and federal officers under pledges of confidentiality. The legislative history of § 6(f) "attests amply a congressional purpose to create an independent agency empowered not only to investigate and adjudicate, but also to convey the informational fruits of its labors to the American public." *FTC v. Cinderella Career & Finishing Schools, Inc.*, 404 F.2d 1308, 1319 (D.C.Cir.1968) (Robinson, J., concurring). In fact, in the original House version of the FTC Act of 1914, the proposed Commission's sole function was to serve "as an instrument of information and publicity, and as a clearing house for the facts by which both the public mind and the managers of great business undertakings should be guided." H.R.Rep. No. 533, 63d Cong., 2d Sess. 2 (1914). Although the Act was later amended to give the FTC enforcement and administrative powers as well, the final conference report viewed the Act as retaining the House bill's provisions concerning the FTC's role as publicist. H.R.Conf.Rep. No. 1142, 63d Cong., 2d Sess. 18 (1914).

Precisely the opposite tack is taken by HSR, which does not authorize the FTC to make public any information. Rather, it exempts all information submitted to the FTC and the Justice Department from disclosure under the Freedom of Information Act *and* requires that no such information or material be made public with two stated exceptions for Congress and its committees. Unlike the FTC Act, the premerger provisions of HSR were not intended to make either the FTC or the Justice Department a "clearing house for the facts" concerning mergers; HSR's fundamental goal was to improve the efficiency of merger regulation. It is apparent that there is no necessary identity of purpose in the disclosure policies behind HSR and the FTC Act.

The legislative history does not record the political judgments and compromises which lay behind the final compromise leading to the passage of § 7A(h), but there was concern over the disclosure of materials Congress was requiring to be filed. Congress may have been worried that such disclosures would be a disincentive to prompt and complete compliance with the premerger notification procedures by potential merger partners. In addition, HSR was designed to regulate only mergers of corporations above a certain size. Because HSR only covers transactions likely to affect the entire national economy, Congress may have wanted to centralize regulation of such mergers in the FTC and the Justice Department. Disclosure to state attorneys general would tend to balkanize that needed centrality. This case would be an example of such a problem: here, Texas seeks premerger materials with an eye toward a possible attack on a merger that the FTC has already tentatively approved. Section 7A(h), read as literally written, furthers the policy of centralized enforcement of HSR.

Section 6(f), in contrast, deals with information that the FTC might obtain from any other source, and which might implicate more localized antitrust concerns. In such circumstances, the policies of federal/state cooperation and minimization of duplicative

enforcement might well prevail over concerns of centralization; accordingly, Congress in its 1980 amendment to § 6(f) confirmed that the FTC, in its discretion, could choose to disclose its general files to the states.

The skimpy relevant legislative histories of the statutes make it difficult to identify confidently these concerns as being those of the respective enacting Congresses. But that is not the point. Their very existence means that the suggestion that the word "public" ought to be given similar readings in the FTC Act and HSR is simply too facile. It is not self-evident that because both §§ 7A(h) and 6(f) treat disclosure, their language is to be given identical meaning. Given their distinct histories, one could reasonably surmise the opposite—as the FTC did in its May 2 ruling.

–5–

Texas argues that no deference is due the construction given HSR by the FTC and the Antitrust Division. Conceding that a reviewing court "should normally" accord deference to an agency's expert interpretation of a statute it is charged with administering, Texas urges that the question of statutory interpretation calls upon no expertise of the Commission. It points to *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (courts are "final authorities on issues of statutory construction" and must reject agency's interpretations that are "inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement") and *SEC v. Sloan*, 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978) (courts "are not obligated to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate") (citations omitted).

We have no quarrel with these decisions but they only here beg the question of the reading to be given the statute. The more apt standard is:

> If ... the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, *if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.*

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, — U.S. —, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (emphasis added).

Texas urges that the FTC decision of May 2, 1984 reflected a departure from a "longstanding policy of sharing premerger notification materials with state attorneys general," and is entitled to little weight. *See Lieberman v. FTC*, 598 F.Supp. 669, 672 (D.Conn.1984); *Bankamerica Corp. v. United States*, 462 U.S. 122, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983). The record does not give us a clear statement of FTC's policy before May 1984. We are told by Commissioner Miller that:

> On some past occasions, the General Counsel of the Commissioner, exercising his delegated authority [to] act upon requests for information generally, has released HSR material to state attorneys general ... on a strictly confidential basis.

1984 Transfer Binder, *Trade Reg.Rep.* ¶ 22,146 at 22,995. Yet Commissioners Pertschuk and Bailey urge that the practice has been routinely followed "since at least 1979." We are certain, however, that until the FTC decision in 1984, the agency had made no considered, formal evaluation of the scope of its disclosure authority under HSR. In any event,

> The fact that the agency has from time to time changed its interpretation ... does not, ... lead us to conclude that no deference should be accorded the agency's interpretation of the statute. An initial agency interpretation is not instantly carved in stone. On the contrary,

the agency ... must consider varying interpretations and the wisdom of its policy on a continuing basis.

*Chevron U.S.A. v. Natural Resources Defense Council,* 104 S.Ct. at 2792.

■ Viewed in the light most favorable to Texas, HSR is no more than ambiguous. So viewed, the operative mechanics and implementation of any perceived congressional policy of state-federal cooperation efforts in the enforcement of the antitrust laws, as seen by the agencies charged with that duty is surely of weight. We are persuaded that the views of the Antitrust Division and the FTC are entitled to deference in the reading of HSR.

## III

In a sequential pattern of inquiry into the purpose of Congress a first subscription to the notion that sharing HSR materials with state attorneys general is a sound policy, misplaces the focus. It presents an unacceptably high risk that the intent of Congress was discovered in the pocket of a black robe, rather than in Congressional halls. This we decline to do, despite the well-stated plea of Texas.

■ In summary, the language of § 7A(h) and the statements of its legislative proponents on their face preclude disclosure of premerger materials to state attorneys general. Section 6(f) of the FTC Act is not a compass that points to § 7A(h)'s true meaning; the two statutes were passed with different destinations in mind. The agencies that enforce § 7A(h), the FTC and the Justice Department, agree that it does not allow disclosure to the states. Their interpretation is both permissible and reasonable, and we will not disturb it. If the Executive Branch and we, in turn, have misread the intent of the Congress, that body is free to express its intent by amending the Hart-Scott-Rodino Act as it amended the FTC Act in 1980.

AFFIRMED.