771 F.2d 32
 54 USLW 2130, 1985-2 Trade Cases 66,747
 Joseph I. LIEBERMAN, Attorney General, State of Connecticut,
Hubert H. Humphrey III, Attorney General, State of
Minnesota, Leroy S. Zimmerman, Attorney General,
Commonwealth of Pennsylvania, Dennis J. Roberts II, Attorney
General, State of Rhode Island, Appellees,
v.
FEDERAL TRADE COMMISSION, Appellant.
 No. 1036, Docket 85-6023.
 United States Court of Appeals,
Second Circuit.
 Argued April 16, 1985.
Decided Aug. 20, 1985.
 
 John H. Carley, Gen. Counsel, F.T.C., Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Alan H. Nevas, U.S. Atty., for the District of Conn., W. Philip Jones, Assistant U.S. Atty., Hartford, Conn., Howard E. Shapiro, Deputy Gen. Counsel, Joanne L. Levine, Sandra M. Vidas, Attorneys, F.T.C., Washington, D.C., of counsel), for appellant.
 Robert M. Langer, Asst. Atty. Gen., Hartford, Conn., (Joseph I. Lieberman, Atty. Gen. of Conn., Neil G. Fishman, Asst. Atty. Gen., Hartford, Conn., Peter Boorman, Law Intern; Hubert H. Humphrey III, Atty. Gen. of Minnesota, Sarah Mulligan, Asst. Atty. Gen., St. Paul, Minn.,Leroy S. Zimmerman, Atty. Gen. of Pennsylvania, Eugene F. Waye, Deputy Atty. Gen., Harrisburg, Pa., Arlene Violet, Atty. Gen. of Rhode Island, Linda Buffardi, Sp. Asst. Atty. Gen., Providence, R.I., of counsel), for appellees.
 Before MANSFIELD, OAKES and MESKILL, Circuit Judges.
 OAKES, Circuit Judge:
 On a difficult question of statutory interpretation, seldom does a court of appeals have the benefit, as we do in this case, of guidance from two cogent, well-reasoned opinions going in opposite directions. The difficulty of the question is revealed not only in the direct conflict between these two decisions, but also in the three-to-two decision of the Federal Trade Commission ("FTC" or "Commission"), the administrative agency that deals with the statute we must interpret. The question is whether section 7A(h) of the Clayton Act, 15 U.S.C. Sec. 18a(h) (1982), enacted as part of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub.L. No. 94-435, 90 Stat. 1383 ("H-S-R"), prohibits the Commission from furnishing premerger information to state attorneys general acting in their parens patriae capacities. The majority of the Commission said that it did. The United States District Court for the District of Connecticut, M. Joseph Blumenfeld, Judge, disagreed in the decision now on appeal. Lieberman v. FTC, 598 F.Supp. 669 (D.Conn.1984). The Fifth Circuit, however, agreed with the Commission in Mattox v. FTC, 752 F.2d 116 (5th Cir.1985). We find the language of section 7A(h) not unambiguous, the legislative history sparse, and the administrative interpretation of debatable if not doubtful usefulness. But in light of the congressional purpose we divine to be at work, we come down with the Fifth Circuit and the majority of the Commission, and therefore are required to reverse.
 BACKGROUND
 The Attorneys General of Connecticut, Minnesota, Pennsylvania, and Rhode Island brought this action against the Commission alleging that the Commission improperly denied their requests for access to documents generated by the Commission in connection with a merger proposed between Texaco, Inc., and Getty Oil Company.[1] The attorneys general sought the information as part of an effort to enforce both federal and state antitrust laws. States have long had the right under section 16 of the Clayton Act, 15 U.S.C. Sec. 26, to seek to enjoin antitrust violations, such as violations of section 7 of the Clayton Act, 15 U.S.C. Sec. 18, which prohibits mergers that may tend substantially to lessen competition or to create a monopoly. See Hawaii v. Standard Oil Co., 405 U.S. 251, 259-60, 92 S.Ct. 885, 889-90, 31 L.Ed.2d 184 (1972); Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 450-52, 65 S.Ct. 716, 722-23, 89 L.Ed. 1051 (1945). The state attorneys general, of course, may also seek to enjoin unlawful mergers under their respective state antitrust laws. See Connecticut Anti-trust Act, 17 Conn.Gen.Stats.Ann. ch. 624, Secs. 35-26, -32 (West 1981); Minnesota Antitrust Law, 20B Minn.Stat.Ann. Secs. 325D.51, .59 (West 1981); Commonwealth Attorneys Act, 71 Pa.Cons.Stat.Ann. Sec. 732-204(c) (Purdon Supp.1985); Rhode Island Antitrust Act, 2 R.I.Gen.Laws Secs. 6-36-4, -11, -12 (Supp.1984). As part of the FTC's policy "to cooperate with other governmental agencies to avoid unnecessary overlapping or duplication of regulatory functions," 16 C.F.R. Sec. 4.6 (1985), federal regulations allow state law enforcement agents to request access to Commission records if the state officials certify that the information will be maintained in confidence and used only for official law enforcement purposes. Id. Sec. 4.11(c). Between January and April 1984, appellees made several such requests for premerger information about the Texaco/Getty merger.[2]
 In letters issued May 2, 1984, the four state attorneys general were notified that the Commission had held that it was not authorized to share information and documentary material filed with it before merger by the merging companies pursuant to Title II of H-S-R, now codified as section 7A of the Clayton Act. The Commission's decision turned on its interpretation of section 7A(h), which states that "no [section 7A] information or documentary material may be made public" except in administrative or judicial proceedings but provides for disclosure to Congress or any duly authorized congressional committee or subcommittee. The decision marked the first time that the Commission addressed whether section 7A(h) barred the confidential disclosure of premerger information to state law enforcement officials, but on prior occasions Commission General Counsels had granted state officials access to premerger materials. The Justice Department, however, has always denied such access, according to an affidavit submitted to the district court in this case by the Assistant Attorney General for Antitrust, J. Paul McGrath. See also Antitrust Div., U.S. Dep't of Justice Antitrust Division Manual V11-15 (1979) (stating that H-S-R material "will not be disclosed to state attorneys general").
 It will be recalled that the FTC, an independent federal agency, has a multifaceted role in federal antitrust law enforcement. For example, the agency is authorized to enforce section 5 of the Federal Trade Commission Act, 15 U.S.C. Sec. 45 ("FTC Act"), with prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." More to the point in this case, together with the Department of Justice the Commission also enforces section 7 of the Clayton Act, 15 U.S.C. Sec. 18, which, as noted above, prohibits acquisitions that may tend to have anti-competitive effects. Section 11 of the Clayton Act, 15 U.S.C. Sec. 21, vests the Commission with authority to enforce compliance with the substantive provisions of the Clayton Act, such as section 7, by means of administrative proceedings reviewable in the court of appeals.[3] In connection with such administrative proceedings, the agency may issue orders to cease and desist or orders of divestiture under 15 U.S.C. Secs. 21, 45, as well as bring suit in federal district court for a preliminary injunction under section 13(b) of the FTC Act, 15 U.S.C. Sec. 53(b), to preserve the status quo pending completion of its administrative challenge. At the same time, the FTC has played the role of publicist since its inception. Congress enacted section 6(f) of the FTC Act, 15 U.S.C. Sec. 46(f), to authorize the FTC "to convey the informational fruits of its labors [of investigation and adjudication] to the American Public." FTC v. Cinderella Career & Finishing Schools, Inc., 404 F.2d 1308, 1319 (D.C.Cir.1968) (Robinson, J., concurring).
 
 
 1
 A crucial element of the Commission's and Justice Department's enforcement strength is the power to investigate possible antitrust violations. The Commission has long had authority to use the compulsory process conferred by sections 6 and 9 of the FTC Act, 15 U.S.C. Secs. 46(a), (b), 49, to investigate corporate acquisitions that might violate section 7 of the Clayton Act. See, e.g., Menzies v. FTC, 242 F.2d 81, 83-84 (4th Cir.), cert. denied, 353 U.S. 957, 77 S.Ct. 863, 1 L.Ed.2d 908 (1957). The Antitrust Civil Process Act, 15 U.S.C. Sec. 1311-1314, gives the Antitrust Division of the Justice Department similar investigative powers by authorizing it to use Civil Investigative Demands ("CIDs"). Prior to 1976, however, enforcement of section 7 was hampered because both agencies were often unable to obtain important information about a merger before it was consummated.[4]
 
 
 2
 Congress designed H-S-R in part to solve this problem. The statute has three titles. Title I expanded the general civil investigatory power of the Antitrust Division and established "controls over the Division's use of CID information, in order to protect the confidentiality of these investigative files." H.R.Rep. No. 1343, 94th Cong., 2d Sess. 4 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 2596, 2598. This case requires us to note in particular amended section 4(c)(3) of the Antitrust Civil Process Act, which limits disclosure of CID information to Justice Department or other authorized officials as well as to members of Congress.[5] Title III added section 4C to the Clayton Act, 15 U.S.C. Sec. 15c, which authorizes state attorneys general to bring parens patriae actions for monetary damages sustained by state residents "by reason of any violation of [the Sherman Act]," id. Sec. 15c(a)(1). As noted above, Congress addressed the problem of premerger information in Title II, which amended the Clayton Act by adding section 7A. Section 7A outlines an elaborate process requiring those who attempt acquisitions above a specified size to notify the Commission and the Antitrust Division of their intentions, to furnish information requested by the agencies, and to wait a period of time before consummating the transactions, allowing the agencies to analyze the data.[6] Because much of the information involves sensitive and confidential commercial or financial matters that would ordinarily not be made available without compulsory process, Congress adopted section 7A(h), which reads in full:
 
 
 3
 Any information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section shall be exempt from disclosure under ... [the Freedom of Information Act] and no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding. Nothing in this section is intended to prevent disclosure to either body of Congress or to any duly authorized committee or subcommittee of the Congress.
 
 
 4
 On cross-motions for summary judgment the court below held that section 7A(h) does not prohibit confidential disclosure to state law enforcement officials. The court's conclusion turned in large part on its agreement with the state attorneys general that section 7A(h) should be interpreted in the same way the courts had interpreted the pre-1980 version of section 6(f) of the FTC Act.[7] The Court relied on the decision in Interco, Inc. v. FTC, 490 F.Supp. 39, 44-46 (D.D.C.1979). The Interco court had held that section 6(f)'s provision keeping trade secrets from being made public did not prohibit confidential disclosure to state law enforcement officials. The district court interpreted section 7A(h)'s "public" as in pari materia with the term "public" in the pre-1980 version of section 6(f). 598 F.Supp. at 674-75. Moreover, it read Congress's 1980 amendment to section 6(f), which effectively codified the Interco holding,[8] as support for its conclusion; the amendment demonstrated a legislative intention "to create a Federal-State sharing of information." Id. at 676.
 
 
 5
 The district court further declined to defer to the FTC decision, finding that the agency's past practice had been inconsistent with its present stand. Id. at 672. It also rejected any suggestion that section 7A(h)'s legislative history offered an indication of what Congress had intended. Id. at 673-74. The FTC's construction of legislative intent was said to go to the issue of confidentiality, not to the issue of disclosure on a confidential basis. See, e.g., id. at 674. In sum, the district court considered that it was construing a statutory provision "in the face of a question which the Congress did not squarely consider in the enactment of the statute." Id. at 677.
 
 
 6
 It should come as no surprise that the district court also held that section 6(f) in fact authorizes the FTC's disclosure of premerger information to the state officials. The Commission's contention that section 6(f) only authorizes disclosure of information obtained under the FTC Act, not premerger information obtained under the Clayton Act, failed to persuade. Id. at 677-78. Finally, the court easily avoided the anomaly of finding that the FTC could disclose the information while the Justice Department could not by suggesting that H-S-R expressly included a provision authorizing such disclosure by Justice.[9] Id. at 679.
 
 DISCUSSION
 
 7
 Preliminarily we take note that as a matter of both jurisdiction and jurisprudential prudence we must determine whether, on the one hand, we face a ripe case or controversy, or whether, on the other hand, the disclosure issue has been mooted by the consummation of the Texaco/Getty merger. Since we trust that the attorneys general still could challenge the merger and are still interested in the information, we consider the case not moot. In any event, the question presented is "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 282, 55 L.Ed. 310 (1911). And while the state officials sought only declaratory and injunctive relief ordering the FTC to exercise its discretion to disclose, we have no reason to believe that the case is not ripe. The problem is, of course, that even if the FTC exercised its discretion it might decide not to turn over the information. At the same time, several courts have held that this exercise of discretion is unreviewable. See Fleming v. FTC, 670 F.2d 311, 316-17 (D.C.Cir.1982); Jaymar-Ruby, Inc. v. FTC, 651 F.2d 506, 510-12 (7th Cir.1981); cf. Heckler v. Chaney, --- U.S. ----, 105 S.Ct. 1649, 1655-58, 84 L.Ed.2d 714 (1985) (discussing when certain agency actions are unreviewable because "committed to agency discretion by law"). Thus, holding that the FTC has the discretion to disclose premerger information may have no practical effect. At oral argument, however, the FTC's General Counsel stated that the Commission has not yet considered the question of exercising its discretion. At this point, we are in no position to determine that affirming the decision below would not lead to disclosure in the future.
 
 
 8
 Turning to the merits, we begin by addressing the Commission's argument that we must defer to its interpretation of section 7A(h). We are, of course, well aware that recent precedent in the Supreme Court reaffirms that a federal court must defer to a reasonable interpretation of a statute by the agency charged with the statute's administration. Chevron USA, Inc. v. Natural Resources Defense Council, Inc., --- U.S. ----, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984).[10] However, where, as here, Congress has entrusted more than one federal agency with the administration of a statute, we cannot conclude that either has been vested exclusively with the power authoritatively to interpret the statute. Under such circumstances a reviewing court does not, therefore, owe as much deference as it might otherwise give if the interpretation were made by a single agency similarly entrusted with powers of interpretation. Although here both the Commission and the Justice Department have reached the same result, at least at the present time, there is no reason to think that agency decisions might not differ in an analogous case.[11]
 
 
 9
 Although we do not defer to the agency interpretation, we agree with the FTC that section 7A(h)'s limitation on the disclosure of premerger information to the "public" precludes confidential disclosure to state law enforcement officials.[12] The language of Section 7A(h) does not resolve the issue, but does support our conclusion. The provision's lack of clarity is revealed by noting two disclosure provisions that plainly do address whether federal authorities can disclose information to state officials. The new language in section 6(f) of the FTC Act, see supra note 8, shows that Congress knows how to require that information be made available to state officials on a confidential basis. And section 4(c)(3) of the Antitrust Civil Process Act, see supra note 5, provides an excellent example of how Congress can articulate the opposite intention. See Illinois v. Abbott & Associates, 460 U.S. 557, 570-73, 103 S.Ct. 1356, 1363-64, 75 L.Ed.2d 281 (1983).
 
 
 10
 Nevertheless, we find significant the express exception in section 7A(h) for disclosure "to either body of Congress or to any duly authorized committee or subcommittee of the Congress." The Supreme Court has recently revived the notion that where Congress provides express exceptions, courts should not imply others. See Andrus v. Glover Construction Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). But cf. Note, Intent, Clear Statements, and the Common Law: Statutory Interpretation in the Supreme Court, 95 Harv.L.Rev. 892, 895-96, 904-07 (1982) (suggesting general application of "clear statement" rule unrealistic and immaterial). Moreover, if the term "public" as used in section 7A(h) does not include state officials, why was it necessary to provide an express exception for disclosure to Congress? If state officials are not part of the public, neither are members of Congress. Indeed, the District of Columbia Circuit interpreted the pre-1980 prohibition against public disclosure in section 6(f) as inapplicable to the release of information to Congress. See Exxon Corp. v. FTC, 589 F.2d 582, 589 (D.C.Cir.1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979); Ashland Oil, Inc. v. FTC, 548 F.2d 977, 979 (D.C.Cir.1976).
 
 
 11
 Similarly, the legislative history of section 7A(h) supports, but does not compel, our conclusion.[13] Much of the legislative history simply reveals the obvious; Congress wanted premerger information kept confidential.[14] Such evidence provides sparse support for the proposition that Congress rejected confidential disclosure to state officials. The FTC, however, cites as crucial a statement by Representative Rodino, one of the sponsors of H-S-R, equating the limitation on disclosure of CID information, which as we have noted clearly precludes disclosure to state officials, and the limitation on the availability of premerger information. On the bill's return to the House--after the Senate had acquiesced in and adopted the House version of the confidentiality provision now codified in section 7A(h)--Congressman Rodino explained that "[t]he House applied the same two confidentiality safeguards to premerger data that both the House and Senate bills applied to CID files" and that "the Government agencies themselves cannot discretionarily release premerger data to anyone, but can disclose it only in 'judicial or administrative proceedings.' " 122 Cong.Rec. 30,877 (1976). Congressman Rodino also stated that "[t]he compromise bill adopts the House provisions, because premerger data compiled pursuant to title II of the compromise bill will, in essence, contain the same kind of information as a CID file compiled in a premerger investigation pursuant to title I." Id. In Mattox, 752 F.2d at 120-21, the Fifth Circuit relied in part on the import of Mr. Rodino's statement: "Although a single legislative sponsor's statements do not control our interpretation of a statute, Chrysler Corp. v. Brown, 441 U.S. 281, 311 [99 S.Ct. 1705, 1722, 60 L.Ed.2d 208] ... (1979), they 'deserve[ ] to be accorded substantial weight[.]' FEA v. Algonquin SNG, Inc., 426 U.S. 548, 564 [96 S.Ct. 2295, 2304, 49 L.Ed.2d 49] (1976)."
 
 
 12
 We agree that Congressman Rodino's statement furthers the FTC's argument. Appellees attempt to discount the significance of the remark by noting that it must be read in the context of the earlier disagreement between the House and the Senate over whether premerger information should be disclosed under FOIA, see supra note 13. Mr. Rodino's comments, however, go beyond the confidentiality debate and equate the scope of section 7A(h) with that of section 4(c)(3). At the same time, this case is distinguishable from North Haven Board of Education v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 12 L.Ed.2d 299 (1982). In North Haven, 456 U.S. at 526-27, 102 S.Ct. 1920-21, the Supreme Court found a sponsor's statement during debate to be "authoritative" in the absence of a committee report discussing the provision. Here a committee report fails to draw Mr. Rodino's analogy. In addition, we are chary of finding that Congress expressly intended to give two provisions in the same legislation the same scope, while drafting them differently. The state officials have also provided the court with a recent letter from Congressman Rodino that purports to bolster their argument. The letter states that to Mr. Rodino's memory, Congress did not consider the question presented in this case. Of course, the Congressman acknowledges that he cannot rewrite the legislative history. For that reason, we find the letter of little or no probative value. See Bread Political Action Committee v. FEC, 455 U.S. 577, 582 n. 3, 102 S.Ct. 1235, 1238, n. 3, 71 L.Ed.2d 432 (1982).[15]
 
 
 13
 Fortunately, we need not rely on Congressman Rodino's remarks. Our analysis of the statutory structure as a whole and the purpose behind Congress's action reveals that Congress did not contemplate the use of premerger information by state officials. That is to say, although a state official can seek a preliminary injunction against an illegal merger under federal antitrust law, the structure and legislative history of section 7A show that Congress envisioned that only the Department of Justice and the FTC would use premerger information. Congress enacted section 7A to facilitate federal prevention of unlawful mergers by insuring that relevant data was furnished to federal authorities in time to enable them to act before the "merging firms are ... irreversibly scrambled." See supra note 4. The statute is premised on disclosure followed by a short waiting period; section 7A(b)(2) allows the federal authorities to terminate that waiting period if "neither [the FTC or the Department of Justice] intends to take any action," while section 7A(e) provides for extensions of the waiting period if the federal authorities ask for additional information, see supra note 6. At the same time, section 7A(f) provides for prompt consideration of premerger actions by federal authorities. And the House Report on section 7A refers only to the premerger actions of federal authorities. See H.R.Rep. No. 1373, supra, at --- - ----, reprinted in 1976 U.S.Code Cong. & Ad.News at 2639-43. As the Mattox Court recognized, giving state authorities the premerger information and the chance to bring suit more easily might well mean big delays in the fast world of mergers--delays Congress has not countenanced. We doubt if Congress would have intended to have the staffs of fifty state attorneys general sitting as oversight committees reacting to Commission or Justice Department decisions whether to block large-scale mergers of national or international significance.
 
 
 14
 The district court, 598 F.Supp. at 675, recognized that the key to appellees' arguments was a finding that section 7A(h) and the pre-1980 version of section 6(f) should be read in pari materia. Unlike the district court, however, we find that the interpretation of section 6(f) should not guide our interpretation of section 7A(h). The state officials argue that at one level both statutes are meant to protect the confidentiality of sensitive commercial information. We find this narrow view of the two statutes inappropriate under in pari materia analysis. The Supreme Court has stated that two statutory terms that are part of provisions with the same language and same "raison d'etre" should be read in pari passu. See Northcross v. Memphis Board of Education, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). And this court has suggested that in pari materia analysis turns on indications whether Congress intended the terms to have different meanings. See Hargrave v. Oki Nursery, Inc., 646 F.2d 716, 720 (2d Cir.1980). Section 7A(h) contains an express exception that the pre-1980 version of section 6(f) did not. More important, section 7A(h) and section 6(f) have very different goals. Congress enacted section 6(f) to provide information to the public, albeit with an exception for trade secrets and confidential commercial information. Section 7A(h), however, plays an important limiting role in a comprehensive regulatory scheme that offers no place for state law enforcement efforts. See Mattox, 752 F.2d at 122. In short, our independent interpretation of section 7A(h) provides several indications that Congress did not intend section 7A(h) to mean what the Interco court found section 6(f) to mean.[16]
 
 
 15
 Judgment reversed.
 
 
 
 [1]
 It should be noted that while the state attorneys general sought confidential material disclosed to the Commission, they also sought staff memoranda based on the confidential material. In this case they seek only the staff memoranda. Nothing seems to turn on this point, however, and we take it that this case is no different because state officials seek memoranda based on confidential material rather than the confidential material itself
 
 
 [2]
 Commissioner Pertschuk described the merger as follows:
 Texaco will pay about $10.1 billion for Getty.... A combined Texaco-Getty firm will be the third largest crude oil producer and will have almost $60 billion in sales, putting it in a virtual tie with GM and Mobil as the second largest industrial corporation behind Exxon.
 
 
 [49]
 Fed.Reg. 8563 (1984)
 
 
 [3]
 Under section 15 of the Clayton Act, 15 U.S.C. Sec. 25, the Department of Justice may obtain injunctive relief against unlawful corporate acquisitions. The Commission and the Department of Justice jointly decide which of them will investigate a proposed acquisition and take any necessary law enforcement action. See 2 Trade Reg.Rep. (CCH) p 8550 (1984)
 
 
 [4]
 The House Judiciary Committee Report states that section 7A was intended to give the Government
 a meaningful chance to win a premerger injunction--which is often the only effective and realistic remedy against large, illegal mergers--before the assets, technology, and management of the merging firms are hopelessly and irreversibly scrambled together, and before competition is substantially and perhaps irremediably lessened, in violation of the Clayton Act.
 H.R.Rep. No. 1373, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 2637, 2637.
 
 
 [5]
 Section 4(c)(3) states:
 Except as otherwise provided in this section, while in the possession of the custodian, no documentary material, answers to interrogatories, or transcripts of oral testimony, or copies thereof, so produced shall be available for examination, without the consent of the person who produced such material, answers, or transcripts, and, in the case of any product of discovery produced pursuant to an express demand for such material, of the person from whom the discovery was obtained, by any individual other than a duly authorized official, employee, or agent of the Department of Justice. Nothing in this section is intended to prevent disclosure to either body of the Congress or to any authorized committee or subcommittee thereof.
 15 U.S.C. Sec. 1313(c)(3).
 
 
 [6]
 Section 7A(b), 15 U.S.C. Sec. 18a(b), provides for a waiting period of 30 days for acquisitions and 15 days for cash tender offers, while Sec. 7A(e), id. Sec. 18a(e)(2), authorizes the FTC or Department of Justice to extend the period for acquisitions not more than 20 days and for cash tender offers not more than 10 days. Section 7A(g)(2), id. Sec. 18a(g)(2), provides for additional extensions of time by court order
 
 
 [7]
 The pre-1980 version of Sec. 6(f) authorized the Commission
 [t]o make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.
 FTC Act, ch. 311, Sec. 6(f), 38 Stat. 717, 721-22 (1914).
 
 
 [8]
 Section 6(f) now authorizes the Commission
 [t]o make public from time to time such portions of the information obtained by it hereunder as are in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use: Provided, That the Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential, except that the Commission may disclose such information to officers and employees of appropriate Federal law enforcement agencies or to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such Federal or State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.
 15 U.S.C. Sec. 46(f).
 
 
 [9]
 Title III of H-S-R includes new section 4F(b) of the Clayton Act, 15 U.S.C. Sec. 15f(b), which provides that the Justice Department "shall, upon request by [a] State attorney general, make available to him, to the extent permitted by law, any investigative files."
 
 
 [10]
 The FTC does not argue that its interpretation of section 7A(h) should be given significance on other grounds, such as agency expertise. The FTC relies solely on the Chevron Court's principle of deferring to the agency charged with administering the statute. Nevertheless appellees respond to the Commission's deference argument as if it were based on expertise. We need not address the issue
 
 
 [11]
 We do not mean to suggest that Congress could not delegate dual lawmaking authority
 
 
 [12]
 We pause to note that appellees never sought the Texaco/Getty premerger information as part of an "administrative ... action or proceeding," namely the FTC's consent judgment proceeding, even though the state officials sought to comment on the merger. The FTC, however, did address this exception to Sec. 7A(h)'s disclosure prohibition in General Motors Corp., 3 Trade Reg.Rep. (CCH) p 22,118 (1984), where Chrysler Corp. sought FTC materials about the then proposed consent order covering a joint venture between General Motors Corp. and Toyota Motors Corp. The Commission in a three-to-two vote suggested that Sec. 7A(h) itself did not bar disclosure of premerger information to allow Chrysler to comment on the GM/Toyota consent order proceeding. Id. at 22,844. Nevertheless, the Commission indicated that Sec. 6(f) barred such disclosure, id., a conclusion that appears to conflict with the FTC's position that Sec. 6(f) does not authorize disclosure of H-S-R information, though we need not address the issue, see infra note 16
 Appellees argue that General Motors conflicts with the FTC's decision below. General Motors concerned the "proceedings" exception in Sec. 7A(h), and we cannot agree that it conflicts with the Commission's position that Sec. 7A(h) precludes disclosure.
 
 
 [13]
 Some of the legislative history cited by the Commission is ambiguous at best. For example, Senator Abourezsk was asked what information would be precluded under section 4F(b), see supra note 9, and responded:
 The section specifically limits the Attorney General's power to release documents to whatever his powers are under existing law. Under existing law, he cannot turn over materials given in response to a grand jury demand or to a civil investigative demand. Therefore, the section is limited by existing law to cases where materials were turned over voluntarily. This section is in the bill, because it was requested by members of the House conferees, who had met on this.
 
 
 [122]
 Cong.Rec. 29,160 (1976) (emphasis added). The statement is not very illuminating. On the one hand, it indicates that only information turned over voluntarily--which presumably does not include premerger information--can be disclosed under section 4F(b). On the other hand, Senator Abourezsk did not mention premerger information when describing those materials that cannot be turned over
 
 
 [14]
 For example, Senator Hruska introduced an amendment--identical to what ultimately became section 7A(h)--to the Senate version of the bill, which authorized disclosure under the Freedom of Information Act, but in explaining it only mentioned confidentiality:
 [T]he proposed addition ... requires the Federal Trade Commission and the Assistant Attorney General to keep notification information confidential, except that appropriate congressional inquiry is permitted. The confidentiality provision will insure that respondents are not prejudiced by submitted confidential information concerning a proposed merger or acquisition.
 
 
 [122]
 Cong.Rec. 15,812 (1976). Whether or not premerger information could be disclosed on a confidential basis to state officials, the information could not be disclosed under FOIA; Congress made that intention crystal clear
 
 
 [15]
 Statutory interpretation, it has been suggested, is as much the application of a relatively stable way of thinking about how language should be read as it is the discovery of what Congress actually intended the language to mean. Cf. Posner, Statutory Interpretation--in the Classroom and in the Courtroom, 50 U.Chi.L.Rev. 800, 817-22 (1980) (advocating statutory interpretation as "imaginative reconstruction")
 
 
 [16]
 Even if we were convinced that section 7A(h)'s "public" should be given the same meaning as section 6(f)'s "public," which we are not, we could of course disagree with the Interco court's interpretation of the term. We need not, however, pass on this point
 In light of our interpretation of Sec. 7A(h), we also need not address whether Sec. 6(f) provides authority for the disclosure of premerger information, even though it refers only to "information obtained by [the FTC] hereunder." But we note that we cannot agree with the district court's construction of Sec. 4F(b). Of course, if the court were right that Sec. 7A(h) permitted disclosure it would be another matter. Any decision that it was right, however, would have to come from a higher authority than our own.